865 A.2d 751

RICHARD CORBO, GELGISSER HARDWARE, INC. AND STAPLETON MANAGEMENT, INC., PLAINTIFFS, v. CHRISTOPHER ELLIOT, INSURE HI–TECH, INC., A NEW JERSEY CORPORATION, RICHARD MALOY, ONE BEACON INSURANCE CO., FABAN GENERAL MERCHANDISE & ANTIQUE STORE, D/B/A THE NEW BEGINNINGS SECOND HAND STORE, THE ESTATE OF CHRISTOPHER FABANWO, MARIE SHARMA, THOMAS THERRIEN DEFENDANTS.

Superior Court of New Jersey
Law Division Mercer County

November 7, 2003.

*Sean Campbell, (Wilentz, Goldman & Spitzer)*, attorneys for plaintiffs.

*Meredith Kaplan Stoma (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski)*, attorneys for defendants Insure Hi-Tech, Inc., Richard Maloy and Christopher Elliot.

OSTRER, J.S.C.

## OPINION

■ Three of the defendants have moved to assign this case to Track III, instead of Track I, as designated by plaintiffs and the clerk. The motion raises the issue of how parties initially, and the court ultimately, should properly designate the case type and track for a lawsuit with multiple claims that, if filed separately, would be assigned to different tracks. Consistent with the goals of Best Practices, the track assignment in a case involving multiple causes of action should be based on the predominant or fundamental causes of action in the case.

### Background

Plaintiffs are three related property owners. They seek damages arising out of a fire at plaintiffs' property. On various theories of negligence and contract, plaintiffs seek relief from

tenants, the tenants' employers, an insurer, and plaintiffs' insurance agent or broker. Plaintiffs' complaint consists of seven counts: Count I alleges negligence against tenants Marie and Sandra Sharma and Thomas Therrien for negligently causing the fire. Count II alleges negligence against the Sharmas' and Therrien's employer, Faban General Merchandise & Antique Store, and the Estate of Fabanwo, based on a theory of *respondeat superior*. Count III alleges a breach of the lease provision that required the tenants to act with appropriate care. Count IV seeks a declaratory judgment that One Beacon Insurance Co. must cover the fire loss. Count V is a bad faith claim against One Beacon. In Counts VI and VII, plaintiffs allege that their insurance agents or brokers—Insure Hi-Tech, Inc., Richard Maloy, and Christopher Elliot (hereinafter "Broker Defendants")—failed to secure adequate insurance. Count VI alleges professional negligence and Count VII alleges a breach of fiduciary duty.

Accompanying their complaint filed on August 5, 2003, plaintiffs filed a Case Information Statement pursuant to *R.* 4:5–1(b)(1) and Appendix II–B. In the section of the form where plaintiffs were required to insert the case type number, plaintiffs inserted "505," which stands for "other insurance claim (including declaratory judgment actions)." That case type is placed in Track 1, with a presumptive discovery period of 150 days. Plaintiffs also checked the box to indicate that the case involved a claim for professional malpractice.

Shortly after the complaint was filed, consistent with *R.* 4:5A–1, the clerk's office assigned the case to Track 1. Pursuant to *R.* 4:5A–2(a), the clerk mailed a notice of the assignment to plaintiffs on or about August 7, 2003.

Broker Defendants filed their answer on September 19, 2003, and, consistent with *R.* 4:5–1(b)(1), filed a case information statement as well. But, those defendants inserted "607" as the case type number, which stands for "professional malpractice," a Track III case type with a presumptive discovery period of 450 days. They filed no counterclaim or otherwise added new causes of

action to the suit, except to file a cross-claim for contribution against the other defendants. Broker Defendants simply recharacterized the claims already in the case.

Pursuant to *R.* 4:5A–2(b), Broker Defendants also filed a certification seeking a change of track assignment. The rule states, "Any party other than the plaintiff seeking a change of track assignment shall file and serve a certification of good cause with its first pleading. . . ." Plaintiffs filed a responsive certification on September 30, 2003, in opposition to the change of track assignment, consistent with the rule, which states that "any objection thereto shall be made by responding certification filed and served within ten days." Nonetheless, because Broker Defendants' certification was apparently misfiled through no fault of the parties, the court took no action in response to either certification.

Apparently interpreting the court's inaction as a denial, Broker Defendants filed the instant motion on October 8, 2003. They rely on *R.* 4:5A–2(b), which states, "Any party aggrieved by the court's determination on such application may seek relief therefrom by motion filed and served within 15 days thereafter." Broker Defendants argue that the presence of plaintiffs' professional malpractice claim requires the whole case to be assigned to Track III, to accommodate the 450–day discovery period allowed for such claims. In response, plaintiffs argue that at bottom, their claim is simply a first party action for insurance coverage and should be assigned to Track I. They argue that assignment ·to Track III would unfairly delay resolution of the case and their recovery of compensation.

### Discussion

In identifying the correct track assignment in this case, the court must determine the appropriate standard for cases involving multiple claims that, if filed separately, would be assigned to different tracks with different presumptive discovery periods. The parties suggest two alternative approaches. Plaintiffs urge the court to adopt the lowest track number and shortest discovery period consistent with one or more claims in the suit. By con-

trast, Broker Defendants argue that the track for the whole case should be the highest track number assigned to any of the several claims in the suit.

The court concludes that neither approach is correct. Instead, the goals of New Jersey's system of differentiated case management would be furthered most by assigning the case type and track based on the fundamental cause of action. The Rules of Court provide some guidance and support for this view, but do not conclusively resolve the issue raised by Broker Defendants' motion. Consequently, the court will also analyze the historical background of the track system and the general goals of any differentiated case management system. The court will also analyze the ramifications of the alternative standards that plaintiffs and Broker Defendants have proposed.

*The Text of the Rules.*

Neither the court rules nor the Case Information Statement form itself expressly guide the selection of case type number and track in a multi-claim case. Yet, the standard for changing track assignment mid-stream in a case provides some hint of how to assign a track in the first place.

■ The rules clearly indicate that track assignments shall be based primarily on case type—and not on such factors as alleged procedural or administrative complexity of the case, or the perceived need for additional discovery. *R.* 4:5A–1 simply provides that every civil action "shall be assigned by case type as prescribed by the Case Information Statement in Appendix XII to these Rules to one of the four tracks as therein specified." Complexity or the anticipated need for additional time for discovery may be addressed by a motion to extend discovery, not a track assignment change.

> A track assignment shall not, however, be changed, during or after the time periods herein prescribed, either because of the alleged complexity of the case or on a representation by a party that additional discovery is required. In such event, relief may be sought pursuant to R. 4:24–1.
>
> [*R.* 4:5A–2(b) ]

■ Even in multi-claim cases, only one case type determines the track assignment. R. 4:5–1(b)(1) requires each party to attach to its first pleading a Case Information Statement in the form prescribed by Appendix XII. The prescribed form includes a list of case types, which are allocated to the four tracks, and identified by a number. The form directs the party to insert just one number. Near the top of side 2, the form states, "CASE TYPES (Choose *one* and enter number of case type in appropriate space on the reverse side.)" (emphasis added). The form also includes a catch-all code for case types not included in the list: "999 OTHER (Briefly describe nature of action)."

■ Thus, in a multi-claim case, the party completing the form may not list the various claims, but must select just one. Nor may there be one track for distinct claims against some defendants, and another track for distinct claims against others. The form does not indicate whether the one number selected should be the one that most typifies the fundamental nature of the suit; or the one with the shortest discovery period; or the one with the longest period.

■ The form apparently does offer the party an opportunity to seek a track assignment other than that dictated by the case type. At the bottom of side 2, the form states, "If you believe this case requires a track other than that provided above, please indicate the reason on Side 1 in the space under 'Case Characteristics.'" On the reverse side, the form states, "Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition." Thus, a party may alert the court to the need for a shorter discovery period, or the need for greater case management than would normally be afforded. *See, e.g.,* R. 4:5B–2 (stating that case management conferences must be conducted in all Track IV cases, except actions in lieu of prerogative writs, probate and general equity actions, but case management conferences in Track I, II and III cases shall be conducted upon a party's request or upon the pretrial judge's initiative).

Presumably, the allowable "special case characteristics" that would justify a different track must be other than mere complexity or anticipated need for more discovery time, given the express prohibition in *R.* 4:5A–2(b). Apparently, the number of parties involved in the case, or the number of attorneys involved, or the geographic dispersion of parties, may justify a different track, or at least closer management, to assure that resulting scheduling difficulties do not prevent meeting presumptive discovery deadlines. The Conference of Civil Presiding Judges specifically contemplated that additional parties' involvement might warrant assignment to a higher track than otherwise dictated by the form.

Although . . cases will be presumptively assigned to a track based on case type, it may be that a case that would ordinarily be assigned to one track may have unusual characteristics that an attorney believes would warrant initial assignment to another track. An example might be an auto negligence case (presumptively a Track II case according to the attached CIS) that involves multiple vehicles. The attorney may note on the CIS that characteristics peculiar to such a case would warrant initial assignment to Track III, as more extensive discovery will certainly be needed. . . .

[*Report of the Conference of Civil Presiding Judges on Standardization and Best Practices,* at 10–11 (1999) (hereinafter *"Conference Report"*).]

The "special case characteristics" section of the form, however, does not appear to have been designed to resolve the issue of how to select the one among many implicated case types in a multi-claim case. In sum, although the form itself does not provide guidance as to how to classify the multi-claim case, the form clearly requires the parties and the court normally to select a single case type, and thereby a track, for a whole case.

*R.* 4:5A–2(b) provides some guidance that, among the various case types implicated in a case, the parties and the court should select the fundamental or predominant causes of action as the track-determinative case type. The rule allows a party, or the court, to move to change a track assignment after the time for initial track assignment and appeal have expired. Absent erroneous classifications or data entry, the rule allows a track change only if there has been a change in the "fundamental cause or causes of action."

> After the expiration of the time periods herein prescribed, a track assignment may be changed by the court on its own motion or motion of a party only if the fundamental cause or causes of action have changed or if the case type or track was erroneously identified on a party's Case Information Statement or erroneously entered into the automated docket.
>
> [*R.* 4:5A–2(b)]

The fundamental cause of action can change in various ways. For example, new parties or claims could affect the center of gravity of the case. Thus, a relatively simple book account case could, after the addition of counterclaims and third-party claims, morph into a complex commercial or negligence case. Alternatively, a particular claim may be disposed of or abandoned, clearing the way for other claims to dominate the case. In any event, if the "fundamental cause or causes of action" can determine the track once a case is underway, then the fundamental cause or causes of action should, apparently, dictate the case type and track assignment from the outset.

It is not unusual to refer to the fundamental nature of a case to determine how it should be handled. For example, a party is required to look to the "primary right or the principal relief sought" in determining whether a case is properly filed in Chancery Division or Law Division. *R.* 4:3–1(a)(1). Although the secondary rights or relief would, if viewed in isolation, be more properly heard in another division, the rule assures that the predominant claims are given the most appropriate handling. A similar reliance on the predominant or primary case type seems appropriate in determining the proper track.

*Best Practices Goals*

Assignment according to the fundamental or predominant claims and case types also fulfills major goals of the Best Practices reform, which, among other things, was designed to establish a uniform, state-wide system for differentiated case management, and to establish realistic discovery periods. A "fundamental cause of action test" would set a presumptive discovery period appropriate for the predominant claims in the case, and, through the track

assignment, alert the court to the need for appropriate management.

As the presiding judges observed, the presumptive discovery period under the rules before Best Practices had little credibility. Writing in 1999, they stated, "At present, the 150-day discovery period is rarely observed, attorneys are routinely granted extensions and there is no enforced discovery end date." *Conference Report*, at 18. The track system was intended to provide the appropriate discovery period for the majority of cases at the outset, and to obviate the need for routine extension motions. "The recommended periods, if enforced as they are intended to be, will actually result in less protracted discovery than is now the case." *Ibid.*

The reforms were also intended to set reasonable and reliable expectations for all concerned.

> The intent is not to force cases to complete discovery in a hurry and then wait months or even years for trial, but rather to establish and enforce an orderly progression for each case, with all parties aware of the timing of interim events and of the end event.
>
> [*Ibid.*]

*See also* Pressler, *Current N.J. Court Rules,* Comment 5 on *R.* 1:1–2 (2005) ("The predicate of the project was that ... by establishing realistic discovery periods according to the nature of each case, a discovery-completion target date could be enforceable, and if enforceable, credible trial dates could be set, ending the general expectation that a case would be reached for trial only after multiple adjournments.")

Best Practices was also intended to impose uniformity on a case management system that varied from county to county. Before Best Practices, fourteen counties had adopted a case tracking system based on case complexity, allocating cases into expedited, standard and complex categories. But many counties added subtracks and some non-DCM counties also identified some cases for quick handling or individual case management. *See Conference Report*, at 4. Thus, the presiding judges proposed four tracks, with three progressively longer discovery periods that would be realis-

tic, and that would be enforced. *Conference Report,* Recommendation 4.1, at 18. *See also R.* 4:24–1(c)(setting standards for extensions of time for discovery).

The conference intended that the tracks would reflect the factual complexity of each case. For example, "Track IV cases are likely to be those that are the most factually and/or legally complex. . . ." *Conference Report,* at 7. Yet, the tracks were to be assigned according to case type, not other measures or proxies for case complexity. *Id.,* Recommendation 1.1, at 7. The Conference distinguished between legally and factually complex commercial cases, which should be assigned Track IV, and administratively or procedurally complicated cases, which should be assigned based on the underlying case type. *Id.,* Recommendation 1.11, at 10. This distinction is reflected in *R.* 4:5A–2(b)'s prohibition of track changes based on mere complexity.

Of course, New Jersey could have based case-differentiation or tracking on other factors. Some courts have considered one or a combination of the following: the amount in controversy, the nature of expert testimony needed, the professed anticipated discovery, as well as the case type. *See* C. Cooper, H. Bakke, M. Solomon, *Differentiated Case Management Implementation Manual,* at 3 (U.S. Bureau of Justice Assistance 1993). One advantage of New Jersey's case-type-based system is that it is objectively verifiable by court personnel and transparent to other parties. Reliance on such factors as length of anticipated discovery makes the track assignment susceptible to the subjective views of the plaintiff, and difficult for court personnel to implement evenhandedly. On the other hand, case type smoothes over the inevitable differences among cases of the same type. "No approach has been demonstrated to be superior as long as it permits a jurisdiction to distinguish the amount of preparation and judicial intervention needed to resolve each case fairly and expeditiously." *Ibid.* In short, while other factors could have been adopted, New Jersey has clearly chosen to differentiate cases based on the type of claims involved.

*Analysis of Parties' Positions.*

■ Turning to the case at hand, neither plaintiffs' nor Broker Defendants' proposed track assignment would achieve the goals of New Jersey's tracking system. The negative consequences of their alternatives provide added support for the view that the predominant or fundamental case type should dictate the track assignment and discovery period.

Plaintiffs argue that Track I should govern based on their first-party insurance claim. But, even if a simple contract claim, among plaintiffs' various claims, would by itself be appropriately assigned to Track I and a 150–day discovery period, imposing such a short period on the balance of the claims would create an unrealistically short discovery period for those claims. That would ultimately lead to the kind of additional but avoidable motion practice that Best Practices was designed to limit, as the parties would inevitably seek extensions of time pursuant to *R.* 4:24–1(c).

Allowing the lowest-track case type to dictate the track for the whole case would also create unreasonable expectations among clients, who may expect a case to be trial-ready much sooner than it ultimately will be. In turn, that disappointment and frustration ultimately undermines the public's respect for the civil justice system. Lastly, setting an unrealistically short discovery period for the bulk of the case would impede the system-wide goal of setting credible and predictable deadlines.

On the other hand, opting for Track III as Broker Defendants propose, simply because plaintiffs assert one claim of professional negligence against them, would impose an unreasonably lengthy discovery period for most of the claims and most of the defendants. Of course, if the only claim in the case involved professional negligence, then the case would most likely be assigned Track III, with a 450–day discovery period. (Track III is the "most likely," rather than the certain assignment, because a party conceivably could claim "special case characteristics" on the Case Information Statement that "warranted accelerated disposition"

under a different track.) Yet, it makes all the difference in the world that the case also involves numerous claims that would be assigned Track I or Track II and discovery periods of 150 or 300 days if they were considered separately. The tail should not wag the dog.

A 450–day discovery period for the totality of the case would frustrate the parties' interest in reasonably prompt treatment of the bulk of the claims. For example, the tenant-defendants or the insurer may be able to complete discovery consistent with Track II deadlines and proceed to dispositive motions. To the extent additional time is needed for discovery on the professional negligence claim, a party can timely move under *R.* 4:24–1(c) and, based on good cause, secure a discovery extension solely on that claim. Extending the discovery period for all claims would also delay alternative dispute resolution of those claims, which offers litigants the potential of a more efficient and prompt resolution of disputed claims.

Counsel for Broker Defendants suggested at oral argument that if plaintiffs wanted a prompt resolution of their non-malpractice claims, they should have brought two lawsuits—one against Broker Defendants, with a 450–day presumptive discovery period, and a second against the other defendants. After all, counsel argued, plaintiffs controlled the nature of the initial pleading.

There are two problems with this suggested solution as a general rule. First, such multiplication of suits, even if now allowable under the entire controversy doctrine, would impose unnecessary expense and inconvenience on parties, witnesses and the courts. Second, Broker Defendants' proposed solution would grant plaintiffs undue control over discovery timing, and override potential defendants' interests in a discovery period consistent with the predominant case type. For example, under Broker Defendants' suggested rule that the longest discovery period governs, if plaintiffs were content for some reason with a 450–day discovery period, then the non-Broker-Defendants would be subjected to an inappropriately long discovery period for their claims.

### Conclusion

 In sum, having analyzed the text of the Rules of Court and Case Information Statement, the goals of Best Practices and differentiated case management, and the alternative approaches suggested by the parties, it appears that the fundamental claim or case type should dictate the track assignment and discovery period. In identifying the fundamental case type, one must consider more than the mere number of counts in a complaint that fall into each category. In some instances, two or more claims may be duplicative of one another. In other instances, one claim among several may stand out as the one that predominates over all others. The party selecting a case type should be mindful that the selection will govern the discovery time for all claims. The selection should be made responsibly, cognizant of its impact on the goals of Best Practices and the interests of the parties and the court. *Cf. Government Employees Ins. Co. v. Butler,* 128 *N.J.Super.* 492, 495, 320 *A.*2d 515 (Ch.Div.1974) (stating that the choice of trial division under *R.* 4:3-1(a)(1), which is based on plaintiff's primary right or principal relief sought, "should represent a responsible exercise of the attorney's judgment in order to obtain for all concerned" the advantages of proper assignment).

In this case, the predominant claims sound in tort. By themselves, they would be assigned to Track II as "Tort—Other." Plaintiffs claim that the tenants and their employers negligently caused the fire. Albeit professional negligence, plaintiffs claim that their insurance agents or brokers were negligent as well. While the claims against the insurer and the breach-of-lease claim against the tenants would fall within Track I, these seem to be overshadowed by the tort claims. Moreover, to the extent the Track I claims and the Track II claims are evenly balanced, the number of parties involved support an assignment to the higher track and longer discovery period. As noted above, these "special case characteristics" may justify a longer discovery period.

Defendants' motion to change the track assignment to Track III is denied. For the reasons stated above, the case shall be assigned Track II.